DENNIS D. MILLER (SBN 138669)
LUBIN OLSON & NIEWIADOMSKI LLP
Transamerica Pyramid
600 Montgomery Street, 14th Floor
San Francisco, CA 94111
Telephone: (415) 981-0550
Facsimile: (415) 981-4343
dmiller@lubinolson.com

Attorneys for Secured Creditor
FIRST NATIONAL BANK OF NORTHERN
CALIFORNIA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re | Case No. 17-10199-AJ |
| DOUGLAS WAYNE CATTICH, | Chapter 13 |
| Debtor. | **FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE**<br>[11 U.S.C. §1307(c)] |
| | Date: June 2, 2017<br>Time: 10:00. a.m.<br>Judge: Hon. Alan Jaroslovsky<br>Place: 99 South E Street<br>Santa Rosa, California 95404 |

19120126/602988v1                                                            Case No. 17-10199-AJ
FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO
CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 1 |
| | A. Statement of FNB's Secured Debt and Debtor's Loan Default | 1 |
| | B. Summary of Pending State Court Litigation and FNB Foreclosure | 4 |
| |    1. FNB State Court Action | 4 |
| |    2. Debtor State Court Action 1 | 5 |
| |    3. Debtor State Court Action 2 | 6 |
| | C. Summary of Bankruptcy Facts | 6 |
| III. | ARGUMENT | 7 |
| | A. Debtor's Liquidated Secured Debts of $1.9 million Exceeds the Statutory Limits and he is Ineligible to be a Chapter 13 Debtor | 7 |
| | B. Cause Exists Under Section 1307(c) to Convert or Dismiss the Chapter 7 Case | 9 |
| | C. The Best Interests of Creditors and the Estate Requires Conversion of the Case to Chapter 7 | 10 |
| IV. | CONCLUSION | 11 |

19120126/602988v1     i     Case No. 17-10199-AJ
FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO
CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE

Case: 17-10199    Doc# 23-1    Filed: 04/27/17    Entered: 04/27/17 10:39:07    Page 2 of 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Brown*
   2017 WL 1149074 (9th Cir. BAP 2017) ..................................................................... 8

*In re Eisen,*
   14 F.3d 469 (9th Cir. 1994) ...................................................................................... 9

*In re Kahn,*
   523 B.R. 175 (9th Cir. BAP 2014) ......................................................................... 10

*In re Lehr,*
   479 B.R. 90 (Bankr. N.D. Cal. 2012) ..................................................................... 10

*In re Scovis,*
   249 F.3d 975 (9th Cir. 2001) .................................................................................... 8

*In re Slack,*
   187 F.3d 1070 (9th Cir. 1999) .................................................................................. 8

*In re Soderlund,*
   236 B.R. 271 (9th Cir. BAP 1999) ........................................................................... 9

STATUTES

11 U.S.C. § 109(e) ............................................................................................... 1, 7, 8

11 U.S.C. § 1307(c) .................................................................................................. 1, 9

11 U.S.C. § 1325(a) ...................................................................................................... 9

19120126/602988v1            ii            Case No. 17-10199-AJ
FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE

Case: 17-10199    Doc# 23-1    Filed: 04/27/17    Entered: 04/27/17 10:39:07    Page 3 of 14

## I. INTRODUCTION

Secured Creditor First National Bank of Northern California ("FNB") hereby moves pursuant to 11 U.S.C. Section 1307(c) to convert the Chapter 13 case of Douglas W. Cattich ("Debtor") to Chapter 7 or alternatively to dismiss Debtor's case. By purposefully omitting FNB's secured debt of over $675,000, plus extensive attorney's fees and costs, from his Schedule D (all secured debts are omitted by Debtor in his Schedule D), Debtor tries to give the false impression he can be a Chapter 13 debtor under 11 U.S.C. Section 109(e). However, once FNB's secured debt is included, Debtor's secured debts ($1.9 million) exceed the statutory limit under Section 109(e) ($1,184,200) and he is ineligible to be a Chapter 13 debtor. As of April 26, 2017, two secured creditors have filed objections to confirmation of Debtor's Plan based in part on the fact that the Play has no payment provisions. Based on Debtor's repeated attempts at seeking to avoid payment of FNB's secured debt in multiple actions in the Sonoma County Superior Court, FNB contends that cause exists to convert or dismiss Debtor's case and that the best interests of all creditors and the estate is to convert the Chapter 13 case to Chapter 7.

## II. STATEMENT OF FACTS

Since December 2015, FNB has been involved with the Debtor in multiple litigation matters in the Sonoma County Superior Court, two commenced by the Debtor, seeking to avoid payment of his real estate secured debt. Debtor, who made 9 years of loan payments and admitted, under oath, signing all loan documents, then suddenly contended the loan documents were forged and that the notary who notarized his Deed of Trust bribed the Department of Motor Vehicles so the notary could obtain his driver's license number. Debtor appears to belong to the Sovereign Citizens Movement and rejects California and United States laws. After failing in the pending litigation matters, Debtor filed this Chapter 13 case to stop FNB's foreclosure.

### A. Statement of FNB's Secured Debt and Debtor's Loan Default

On or about July 11, 2007, Debtor executed in favor of America California Bank ("ACB") the Promissory Note, dated July 11, 2007 in the original principal sum of $633,750.00 (the "Note"). *See*, Declaration of Nancy Wu, filed concurrently herewith, hereafter "Wu Dec." ¶ 4, Ex. 1. Pursuant to the terms of the Note, ACB advanced to or on behalf of Debtor the

19120126/602988v1     1     Case No. 17-10199-AJ
FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE

Case: 17-10199    Doc# 23-1    Filed: 04/27/17    Entered: 04/27/17 10:39:07    Page 4 of 14

principal sum of $633,750.00. Debtor does not dispute the loan funds were advanced to him or for his benefit. The Note matures on July 11, 2017.

On or about July 11, 2007, Debtor entered into the Business Loan Agreement, dated July 11, 2007 ("BLA") in favor of ACB which provides the ACB loan was a commercial loan for Debtor to, in part, upgrade his assisted care facility. Wu Dec., ¶ 5, Ex. 2.

Pursuant to the terms of the Note, commencing on August 11, 2007, Debtor promised and agreed to pay to ACB sixty monthly payments of principal and interest of $5,266.74 per month and then fifty-nine monthly payments of principal and interest of $5,460.21, with interest at the rates set forth in the Note, and then one final balloon payment of all unpaid principal, interest and all other charges due on July 11, 2017. Debtor delivered nine years of loan payments to ACB and, in part, in 2015, to FNB. Wu Dec., ¶ 6.

The Note provides, *inter alia*, that in the event any payment is more than 10 days past due, a late charge of 5.0% of the unpaid regularly scheduled payment is assessed. The Note also provides that interest continues to accrue on all amounts due and owing from Debtor under the terms of the Note.

The Note and Loan Agreement further provide that should Debtor default by failing to make any monthly payment when due, or default under the performance of any other terms or conditions of any related document, ACB may declare all sums due and owing under the Note to be immediately due and payable. The Note also provides that should Debtor default by failing to make any payment when due, or breach any term, condition or covenant of the Note or related documents, then ACB can take possession of, among other things, the property taken as security for payment of the Note.

In connection with the Note and BLA, on or about July 11, 2007, Debtor executed in favor of ACB the Deed of Trust against the real property commonly known as 9408 Willow Avenue, Cotati, California 94931 (the "Property") for the purpose of securing repayment of the Note. Wu Dec., ¶ 7, Ex. 3. On or about July 31, 2007, the Deed of Trust was duly recorded in the Official Records of the County of Sonoma as Instrument Number 2007084996.

On or about July 11, 2007, Debtor executed in favor of ACB the Commercial

19120126/602988v1      2      Case No. 17-10199-AJ

FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE

Case: 17-10199    Doc# 23-1    Filed: 04/27/17    Entered: 04/27/17 10:39:07    Page 5 of 14

Security Agreement ("Security Agreement") pursuant to which Debtor granted a security interest to ACB in all assets owned or subsequently acquired by Debtor. ACB perfected its security interest by filing a UCC-1 financing statement with the California Secretary of State. Wu Dec., ¶ 8, Ex. 4.

In September 2015, FNB acquired all rights, title and interest in and to the Note, the BLA, the Deed of Trust, the Security Agreement and all related loan documents (the "Loan") by merger with ACB. FNB now holds all rights, title and interest to Debtor's loan made by ACB. Wu Dec., ¶ 9.

The Deed of Trust requires Debtor to pay all property taxes, special taxes, charges, fines, etc., assessed against the Property. Debtor defaulted under the Loan documents by, among other things, failing to pay all property taxes assessed against the Property. As of December 1, 2015, not less than the sum of $7,847.23 of property taxes, charges, fines, etc. were past due and unpaid and subject to a lien against the Property. After giving multiple notices of the payment default to Debtor, he refused to respond to FNB or its counsel and continued to fail to pay all such property taxes in 2015 due under the terms of the Note and Deed of Trust. Wu Dec., ¶ 10.[1] Pursuant to the terms of the Note, FNB declared the unpaid balance due thereunder to be immediately due and payable in full. After the default and FNB's acceleration, FNB made demand for payment of all amounts due and owing under the Note. Debtor failed to satisfy FNB's demand.

After FNB accelerated the loan amounts, and commenced a judicial foreclosure action against Debtor in December 2015, *see infra*, Debtor then stopped making all monthly payments due under the Loan and has refused to make any monthly payment due under the Loan to FNB since January 2016. Wu Dec., ¶ 11.

As of March 22, 2017, the date of Debtor's filing of this petition, there was due, owing and payable to FNB, pursuant to the terms of the Note, the following:

---

[1] After FNB filed its state court judicial foreclosure action in 2015, later in 2016 Debtor paid the property taxes current. However, by that time, he had already ceased making the monthly loan payments to FNB.

19120126/602988v1    3    Case No. 17-10199-AJ
FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE

Case: 17-10199    Doc# 23-1    Filed: 04/27/17    Entered: 04/27/17 10:39:07    Page 6 of 14

| Description | Amount |
| --- | --- |
| Principal Amount Due | $549,892.54 |
| Interest through March 22, 2017 | $122,148.69 |
| Late charges | $3,210.87 |
| Total | $675,252.10* |

* Interest, late charges, and all other charges continues to accrue under the terms on the Note until paid in full or date of entry of judgment. FNB has accrued and continues to accrue attorneys' fees and costs in all Debtor litigation matters and now this bankruptcy case. As of March 22, 2107, FNB has accrued fees and costs in excess of $115,000. Miller Dec., *infra* at ¶ 10; Wu Dec., ¶ 12

The Deed of Trust further provides that, should a default occur in the performance of any obligation due in the Note, the BLA or the Deed of Trust, FNB may take possession of the Property. The Deed of Trust also provides that, in the event Debtor defaults under the Loan documents, FNB may foreclose on the Deed of Trust. On October 3, 2016 FNB commenced its non-judicial foreclosure sale and the foreclosure was initially set for March 22, 2017. Wu Dec., ¶ 13

**B.  Summary of Pending State Court Litigation and FNB Foreclosure**

  **1.  FNB State Court Action**

As noted above, on December 3, 2015, FNB commenced the action in the Sonoma County Superior Court titled "First National Bank of Northern California v. Douglas W. Cattich, et al.," Case No.SCV258109 ("FNB Action") pursuant to which FNB sought a judicial foreclosure judgment on the Property. *See*, Declaration of Dennis D. Miller, filed concurrently herewith, hereafter "Miller Dec." ¶ 3, Ex. 2. Among Debtor's pleadings filed in the FNB Action were his Statement of Defendant Douglas W. Cattich re Meet and Confer, dated March 25, 2016, and his Verified Answer to Plaintiff First National Bank of Northern California's Verified Complaint. Miller Dec., ¶ 4, Exs. 3, 4, respectively. In these pleadings, Debtor admitted entering into the ACB Loan, signing all loan documents and failing prior to the filing of the FNB Action to pay the Property taxes owing to Sonoma County.

Initially, Debtor contested that FNB held the rights to enforce the ACB debt challenging FNB's Complaint by demurrer. Miller Dec., ¶ 4. After FNB provided voluminous documents to Debtor proving that FNB had acquired all of ACB's assets, including his ACB

Loan, Debtor withdrew his demurrer and stated,

> Plaintiff has provided verification and documentation of the merger between FNB and the original lender **AMERICA CALIFORNIA BANK**("ACB"), that appears to be sufficient evidence that FNB has standing concerning the mortgage and those specific negotiable instruments subject to the Property. Miller Dec., Ex. 3. (emphasis in original)

In December 2016, the Sonoma County Superior Court granted FNB's motion to compel Debtor to respond to interrogatories and document demands and also deemed all of FNB's requests for admissions admitted determining that Debtor had signed all Loan documents, and had defaulted under the Loan. Miller Dec., ¶ 5, Exs. 5, 6. Despite verbal instructions from the Superior Court and a written order, Debtor still fails to fully and properly respond to FNB's interrogatories and document demands. Miller Dec., ¶ 6, Ex. 7.

**2. Debtor State Court Action 1**

Despite not asserting any cross-complaint in the FNB Action, over a year later on January 6, 2017, Debtor filed the case entitled "Douglas W. Cattich v. First National Bank of Northern California" case no. 259999. ("Debtor Action 1") In his Complaint, Debtor alleged conclusory allegations of signature forgery, and sought to undo the Loan. Miller Dec., ¶ 7, Ex. 8. FNB's demurrer to the Debtor Action 1 Complaint was sustained by the Sonoma Superior Court holding in part "Plaintiff's [Debtor] allegations are unclear, lack sufficient explanation of the parties' interests or relationship vis-à-vis each other and the property, and at most appear to be an improper attempt to put the burden on the alleged encumbrancer or creditor to prove the validity of its claimed interest in the property. [citations omitted.]" Miller Dec., ¶ 8, Ex. 9. The order sustaining the demurrer was entered on April 18, 2017. Debtor has until May 8, 2017 to file his amended Complaint.[2]

---

[2] In about January 2017, I met Jeff Thomas Smith in the Sonoma County Superior Court. He was there assisting the Debtor. Mr. Smith told me that he was a paralegal, working independently, and that Debtor would be filing complaints against FNB related to the FNB Loan. Later I discovered that Mr. Smith had appeared before District Court Judge William Alsop as a party only to have Judge Alsop refer Mr. Smith to the State Bar for the unauthorized practice of law. Miller Dec., ¶ 7, Ex. 9.

19120126/602988v1     5     Case No. 17-10199-AJ
FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE

Case: 17-10199    Doc# 23-1    Filed: 04/27/17    Entered: 04/27/17 10:39:07    Page 8 of 14

### 3. Debtor State Court Action 2

On February 8, 2017, Debtor filed his second case titled "Douglas W. Cattich v. First National Bank of Northern California, Daniel Serbin and Tom McGraw." Case no. SCV260140. In response to FNB's demurrer, Debtor filed an amended complaint and added FNB's counsel Dennis D. Miller as a defendant. Miller Dec., ¶ 9, Ex. 11. The Sonoma Superior Court has granted Tom McGraw's motion to quash service and FNB has a demurrer against the Amended Complaint set for hearing on May 24, 2017. Miller Dec., ¶ 9.

### C. Summary of Bankruptcy Facts

FNB's non-judicial foreclosure sale was initially set for March 22, 2017 but FNB decided to continue it to April 5, 2017. On March 22, 2017, Debtor filed his instant Chapter 13 bankruptcy case which FNB was unaware of on March 22, 2017. Debtor's schedules are incomplete in that Debtor fails to schedule FNB on his Schedule D as a secured creditor with a senior deed of trust on the Property, *i.e.*, 9408 Willow Avenue, in excess of $790,000. *See*, First National Bank of Northern California's Request for Judicial Notice, hereafter "RJN", Ex. 2. Debtor also fails to schedule any secured creditor on Schedule D and fails to connect any lender to a subject property even though he identifies three lenders as secured, *i.e.*, "Mortgage" holders. RJN Ex. 3. By cross referencing Debtor's schedules, RJN Exs. 1, 2 and his statement of financial affairs, RJN Ex. 3, the following information on values of real property he owns and secured debt is as follows:

| Property | Value |
|---|---|
| 465 Grapevine | $1.4M |
| 9408 Willow Ave., Cotati | $1.6M |
| 1228 Fair Oaks Ave., Santa Rosa | $600,000 |

| Lenders | Debt |
|---|---|
| Chase | $500,000 |
| Select Portfolio Servicing | $557,946 |
| Specialized Loan Servicing | $83,349 |
| Subtotal | $1,141,295 |
| FNB | $790,000 |
| **Total** | $1,931,295.00 |

19120126/602988v1  6  Case No. 17-10199-AJ
FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE

Case: 17-10199    Doc# 23-1    Filed: 04/27/17    Entered: 04/27/17 10:39:07    Page 9 of 14

Lenders Chase, Select Portfolio Servicing and Specialized Loan Servicing are all scheduled by Debtor as "mortgage" lenders. RJN Ex. 3. While Debtor states the value of the Property is $1.6 million, FNB is informed and believes the value is more likely $900,000 to $1,000,000. Debtor has also filed his Chapter 13 plan. RJN Ex. 4. Notably, it does not provide for payment of any unsecured creditors, nor any secured creditors including FNB, nor any payment to the Chapter 13 Trustee. It provides only that the Debtor will pay $0.00 to the Chapter 13 Trustee for 0 months. RJN Ex. 4. And it is a form used by the Central District of California Bankruptcy Court.

JP Morgan Chase Bank, holder of a deed of trust on 465 Grapevine Lane, has filed an objection to plan confirmation as will FNB. *See* docket no. 20. On April 26, 2017, Wells Fargo, holder of a deed of trust on 1228 Fair Oaks, Santa Rosa, California, filed its objection to plan confirmation, based in part on a defective plan that fails to provide for payment to any creditors or the Chapter 13 Trustee. *See* docket no. 22. FNB requests the Court take judicial notice of these Plan objections.

## III.     ARGUMENT

Debtor's secured debt in excess of $1.9 million is vastly over the statutory limit and thus he is ineligible to be a Chapter 13 debtor. He has engaged in multiple litigation matters and a Sonoma Superior Court judge has stated Debtor's pleadings are unclear and lack specificity. He refuses to comply with California discovery procedures despite a state court order. He alleges the ACB loan documents were forged but offers no explanation why he made 9 years of monthly loan payments on an allegedly forged loan. He claims he wanted a 30 year loan, however Debtor has failed to produce any writings to support that claim. His actions justify an order converting his Chapter 13 case to Chapter 7.

### A.     **Debtor's Liquidated Secured Debts of $1.9 million Exceeds the Statutory Limits and he is Ineligible to be a Chapter 13 Debtor.**

To be eligible as a Chapter 13 debtor, a party cannot have secured, liquidated, non-contingent debts in excess of $1,184,200. 11 U.S.C. Section 109(e). To determine the amount of these debts, the Court reviews the debtor's schedules, "checking only to see if the schedules were

19120126/602988v1                                7                        Case No. 17-10199-AJ
FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE

Case: 17-10199    Doc# 23-1    Filed: 04/27/17    Entered: 04/27/17 10:39:07    Page 10 of 14

made in good faith." *In re Scovis,* 249 F.3d 975, 982 (9th Cir. 2001) Further, the Bankruptcy Appellate Panel for the Ninth Circuit in *In re Brown* 2017 WL 1149074, *3 (9th Cir. BAP 2017) stated:

> Nevertheless, the Scovis rule is not absolute. Scovis acknowledged that, when the good faith of the debtors in filing their schedules is challenged, the bankruptcy court can consider evidence beyond the schedules. *Id.*: see also In re Guastella, 341 B.R. at 918-21 (applying good faith exception and looking beyond schedules to determine the debtor improperly listed debt at $0 for eligibility purposes).

In this case, the lack of good faith is *prima facie* demonstrated by the Debtor listing three properties worth over $3.6 million and only three "mortgage" lenders with debts over $1.14 million, but not completing Schedule D, *i.e.*, failing to note which lender holds a lien on which property. While the Debtor may claim lack of legal expertise, form Schedule D specifically asks the debtor to identify all his secured creditors and to designate the real property collateral. This omission hardly seems inadvertent as Debtor has completed many other Schedules and his Statement of Financial Affairs, and successfully identified three secured lenders and three properties he owns. This admitted lack of good faith allows this Court to look at extrinsic evidence to determine the eligibility issue.

The Schedules disclose the Debtor allegedly has secured debt totaling $1.14 million. However, Debtor has omitted that FNB holds a secured debt in excess of $790,000 secured by a senior lien on the Property. This debt is properly included in the debt calculation even if the debt is disputed. *In re Slack,* 187 F.3d 1070, 1074-1075 (9th Cir. 1999) In *Slack,* the Ninth Circuit Court of Appeals stated that if a debt is "calculable with certainty," it is included in the determination even if the liability is disputed. ("Even if a debtor disputes the existence of liability, if the *amount* of the debt is calculable with certainty, then it is liquidated for the purposes of §109(e)")[3] The Schedules even disclose that Debtor admits he is in litigation with FNB so he has no excuse for not scheduling FNB's secured debt. *See*, Debtor's Statement of Financial Affairs, p. 5. FNB RJN Ex. 3. Even if you exclude FNB's fees and costs for

---

[3] Here, FNB vehemently denies the debt is contested. Debtor has not denied he received the loan proceeds and then paid over 9 years of loan payments on a 10 year loan.

19120126/602988v1  8  Case No. 17-10199-AJ
FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE

Case: 17-10199   Doc# 23-1   Filed: 04/27/17   Entered: 04/27/17 10:39:07   Page 11 of 14

calculation purposes, FNB's secured debt is $675,000, bringing the total secured debt to over $1.8 million. This is significantly over the Chapter 13 limit of $1,184,200. The Debtor is not eligible for Chapter 13 and the case must be converted or dismissed.[4]

**B.      Cause Exists Under Section 1307(c) to Convert or Dismiss the Chapter 7 Case.**

11 U.S.C. Section 1307(c) provides a non-exhaustive list of factors for the Court to consider in determining whether to dismiss or convert a Chapter 13 case.

> First, it must be determined that there is "cause" to act. Second, once a determination of "cause" has been made, a choice must be made between conversion and dismissal based on the "best interests of the creditors and the estate." *In re Nelson,* 343 B.R.671, 675 (9th Cir. BAP 2006)

The non-exclusive list of items of "cause" are set out at Section 1307(c) (1) to (11). Here, the ineligibility test is one "cause" factor for conversion or dismissal. *In re Soderlund,* 236 B.R. 271, 274-75 (9th Cir. BAP 1999) Next, Debtor's Plan is empty of any payment provisions, and FNB contends should not even qualify as a timely filed plan under Section 1307(c)(3). Debtor does not provide for any payment to any party, whether unsecured, secured, or the Chapter 13 Trustee. Debtor even states he will pay the estate "$0". The Court should find that filing an empty plan fails to comply with Section 1307(c)(3).

"Cause" also exists as the Debtor has filed this plan and bankruptcy case in bad faith. *In re Eisen,* 14 F.3d 469 (9th Cir. 1994). "A Chapter 13 petition filed in bad faith may be dismissed for "cause" pursuant to 11 U.S.C. Section 1307(c). [citations omitted] To determine if a petition has been filed in bad faith courts are guided by the standards used to evaluate whether a plan has been proposed in bad faith. 11 U.S.C. Section 1325(a); *Powers,* 135 B.R. at 994:*Gier,* 986 F.2d at 1329." *Id*. at 470. In *Eisen,* the Ninth Circuit affirmed the bankruptcy court decision dismissing the case for bad faith based on the debtor's submission of contradictory and misleading facts regarding certain real property and repeat filings to stifle a state court foreclosure.

---

[4] Debtor schedules the value of the Property at $1.6 million but has never provided any proof of that value. FNB is informed and believes the Property is probably worth $900,000 to $1,000,000. Miller Dec., ¶ 3.

19120126/602988v1                                    9                              Case No. 17-10199-AJ
FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE

Case: 17-10199    Doc# 23-1    Filed: 04/27/17    Entered: 04/27/17 10:39:07    Page 12 of 14

The bad faith filing can also be found under the *Leavitt* factors. *In re Lehr,* 479 B.R. 90 (Bankr. N.D. Cal. 2012) There the court identified non-exclusive factors to determine a bad faith filing:

> (1) whether debtor misrepresented facts in the petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed the petition in an inequitable manner; (2) the debtor's histories of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present.
> *Id.* at 98.

Here, the Debtor's Plan is empty of any payment provisions and is thus *prima facie* defective. Debtor has used a plan form from the Central District whereas he input onto his schedules that he was filing Chapter 13 in the Northern District. Debtor has filed misleading schedules (misleading by omission) to avoid a direct admission that he is ineligible to be a Chapter 13 debtor, *i.e.*, a manipulation of the Code. In Debtor's State Court Action 1, the Sonoma County Superior Court rejected his complaint as not making any sense. FNB's demurrer is pending in Debtor's State Court Action 2. In FNB's case against him, which was filed over a year before Debtor suddenly began to claim forgery, FNB obtained an order compelling Debtor to respond to interrogatories and document demands, which Debtor has yet to satisfy and deeming conclusive liability admissions against the Debtor. This case was filed to stifle FNB's actions to exercise its rights to foreclose on its Deed of Trust and to stay its judicial foreclosure while prosecuting meritless claims against FNB, one of its officers, the loan notary, and FNB's counsel.

These facts show that cause exists for the Court to convert or dismiss this Chapter 13 case.

### C. The Best Interests of Creditors and the Estate Requires Conversion of the Case to Chapter 7

"In addition to a non-exclusive statutory list of factors, the filing of a chapter 13 case in bad faith may constitute cause for conversion. *In re Kahn,* 523 B.R. 175, 185 (9th Cir. BAP 2014), abrogated on other grounds, relying on *In re Leavitt and In re Eisen* factors. *Supra* at III.B. In *Kahn,* the Bankruptcy Appellate Panel noted the debtor had misrepresented facts in his

19120126/602988v1     10     Case No. 17-10199-AJ
FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE

Case: 17-10199    Doc# 23-1    Filed: 04/27/17    Entered: 04/27/17 10:39:07    Page 13 of 14

petition and had failed to provide for payment to his largest creditor. These factors supported conversion not dismissal of the case. The bad faith filing in this case is shown by the empty plan and the misrepresentations by omission in the Debtor's schedules to seek to prove eligibility for Chapter 13, he is not and by omitting complete disclosure of all of his secured creditors.

This Court should convert the Chapter 13 case to Chapter 7 as that is the best interest of creditors. If the Court dismisses this case, it is inevitable the Debtor will refile to stop FNB from foreclosing on the Property. Chase has objected to plan confirmation as it is not being treated as required under the Bankruptcy Code. Debtor rejects California and federal law. He refuses to comply with California discovery proceedings. He files voluminous state court pleadings making no sense. Prior to the filing of the FNB Action, Debtor ignored multiple notices to pay the Property taxes current and refused. He refused to even respond to FNB's letters regarding the property tax default, or to respond to FNB's counsel at any time prior to the litigation. FNB engaged in a pre-trial settlement conference and Debtor refused to even speak with FNB's counsel. For whatever reason, Debtor refuses to pay his loan after doing so for 9 years and has commenced multiple litigation cases and this case to avoid his loan obligation as it is maturing soon, *i.e.*, on July 11, 2017.

## IV. CONCLUSION

Based on the foregoing, FNB contends cause exists to convert this case to Chapter 7 or to dismiss it and the bad faith filing requires conversion. FNB respectfully requests this Court to convert Debtor's Chapter 13 to Chapter 7, or alternatively dismiss the case and for such other and further relief as the Court deems appropriate.

Dated: April 27, 2017   LUBIN OLSON & NIEWIADOMSKI LLP

By: */s/ Dennis D. Miller*
Dennis D. Miller
Attorneys for Secured Creditor
First National Bank of Northern California

19120126/602988v1   11   Case No. 17-10199-AJ

FIRST NATIONAL BANK OF NORTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 7, OR ALTERNATIVELY DISMISS DEBTOR'S CHAPTER 13 CASE